## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| WIRELESS PROTOCOL INNOVATIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 6:15-CV-00918-KNM |
| TCT MOBILE (US) INC. AND TCT MOBILE INC., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant TCT Mobile (US) Inc. and Defendant TCT Mobile Inc.'s (collectively, "TCT" or "Defendants") Motion to Transfer for Improper Venue, or Alternatively, to Dismiss (Doc. No. 168). For the reasons stated herein, TCT's Motion to Transfer for Improper Venue, or Alternatively, to Dismiss (Doc. No. 168) is **GRANTED-IN-PART**. It is **ORDERED** that the above-styled case be **TRANSFERRED** to the Central District of California.

### Background

On October 23, 2015, WPI originally filed suit against Defendants in the Eastern District of Texas alleging infringement of several patents.[1,2] On March 29, 2017, the Court granted TCT's Motion to stay the case pending *Inter Partes* Review ("IPR").[3] On May 22, 2017, less than two months after the stay was issued, the Supreme Court decided *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514, 197 L.Ed.2d 816 (2017) ("*TC Heartland*"). Following proceedings at the Patent Trial and Appeal Board, WPI filed a motion to lift the stay (Doc. No.

---

[1] U.S. Patent Nos. 6,381,211; 8,274,991; 8,565,256; and 9,125,051.
[2] Pl.'s Compl., Doc. No. 1.
[3] Order Granting Mot. to Stay, Doc. No. 147.

165), which the Court granted (Doc. No. 167). TCT then filed the instant Motion.[4] Prior to ruling on the instant Motion, the Court allowed WPI to conduct limited venue-related discovery,[5] and the parties filed supplemental briefings.[6] The only remaining patent at issue is now expired (U.S. Patent No. 8,274,991).[7]

**Legal Standard**

Title 28 U.S.C. § 1400(b) constitutes "the exclusive provision controlling venue in patent infringement proceedings." *TC Heartland*, 137 S. Ct. at 1517. Section 1400(b) provides that an action for patent infringement may be brought in the judicial district where the defendant either "resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." Under § 1400(b), domestic corporations "reside" only in their state of incorporation. *TC Heartland* at 1521. There are three requirements that courts use to determine if a defendant has a "regular and established place of business" in a particular district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) ("*In re Cray*").

Which party bears the "burden of persuasion on the propriety of venue" and whether venue is proper are issues unique to patent law and are thus governed by Federal Circuit law. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1012-13 (Fed. Cir. 2018). The Federal Circuit has held that "upon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue." *Id*. at 1013.

---

[4] Defs.' Mot. to Transfer, Doc. No. 168.
[5] (*See* Order Granting Limited Venue-Related Disc., Doc. No. 179)
[6] (Pl.'s Suppl. Br., Doc. No. 189 and Defs.' Suppl. Br., Doc. No. 191)
[7] Pl.'s Mot. to Lift Stay and Reopen Disc., Doc. No. 165, p. 4.

A failure to satisfy any statutory requirement of § 1400(b) requires a court to conclude that venue is improper. Upon a finding of improper venue, a court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## Analysis

In response to TCT's Motion to Transfer (Doc. No. 168), WPI argues that Defendants waived their right to challenge venue.[8] TCT maintains that they have not waived their right to challenge venue, by rule or by conduct.[9]

## I.      Rule-Based Waiver

For rule-based waiver under Federal Rule of Civil Procedure 12(h)(1), a defendant may waive an improper venue defense under three circumstances: "(1) by failing to move under Rule 12; (2) by failing to object in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course; or (3) by moving under Rule 12 for reasons other than venue without also objecting to venue." *Uniloc USA, Inc. v. Ubisoft, Inc.*, No. 2:16-CV-00781-RWS, 2018 U.S. Dist. LEXIS 165665, at *3 (E.D. Tex. 2018) ("*Uniloc USA*").

According to WPI, TCT has waived its right to challenge venue by admitting proper venue in its answers and affirmatively consenting to proceed before a magistrate judge in the Eastern District of Texas.[10] WPI emphasizes that TCT has yet to identify a case suggesting that a party's express consent to proceed in a particular venue before a magistrate judge can be disregarded because it was given prior to *TC Heartland*.[11]

---

[8]  Pl.'s Resp., Doc. No. 171 at 4-10; Pl.'s Suppl. Br., Doc. No. 189 at 7-9.
[9]  Defs.' Mot. to Transfer, Doc. No. 168 at 1; Defs.' Suppl. Br., Doc. No. 191 at 12.
[10] Pl.'s Resp., Doc. No. 171, pp. 1, 10; Pl.'s Sur-Reply, Doc. No. 177, pp. 1, 3-4; *see* Defs.' Answer to Compl., Doc. No. 15, ¶ 11; *see also* Defs.' Answer to Am. Compl., Doc. No. 86, ¶ 7.
[11] Pl.'s Sur-Reply, Doc. No. 177 at 3-4.

3

However, TCT argues that because *TC Heartland* was decided after the case was stayed, the improper venue defense was unavailable when TCT answered WPI's initial and amended complaints affirming proper venue.[12] TCT asserts that there is no waiver of an improper venue defense even though proper venue was admitted in prior pleadings if the defense was not available at the time it was admitted.[13]

A defendant cannot waive an improper venue defense if the defense is not available to it at the time they file a responsive pleading. *Uniloc USA* at *6. The venue objection was not "available" to TCT until the Supreme Court decided *TC Heartland* because, prior to *TC Heartland*, it would have been improper, given controlling precedent, for the district court to dismiss or transfer the case for lack of venue. *See In re Micron Tech., Inc.*, 875 F.3d 1091, 1096 (Fed. Cir. 2017) ("*In re Micron*"). Thus, TCT's failure to object to venue in a responsive pleading filed before *TC Heartland* does not waive TCT's post-*TC Heartland* objection for improper venue. *See Keranos, LLC v. Silicon Storage Tech., Inc.*, No. 2:13-cv-00017-RWS-RSP, 2018 WL 7283284, at *1 (E.D. Tex. Mar. 1, 2018). Further, there is no support for the idea that TCT's consent to proceed before a magistrate judge would waive an improper venue defense.[14]

TCT did not waive its right to challenge venue under a rule-based theory because the defense was unavailable at the time TCT admitted proper venue in its responsive pleadings.[15] Accordingly, rule-based waiver does not apply to TCT, and TCT is free to raise the improper venue defense absent any waiver by conduct.

---

[12] Defs.' Mot. to Transfer, Doc. No. 168 at 1.

[13] *Id.* at 6.

[14] *See* Pl.'s Resp., Doc. No. 171 at 7.

[15] *See In re Micron*; *Realtime Data LLC v. Hewlett Packard Enterprise Co.*, No. 6:18-CV-00384-RWS, 2018 WL 4599582, at *3 (E.D. Tex. Sep. 24, 2018); *see also* Defs.' Answer to Compl., Doc. No. 15 at ¶ 11; Defs.' Answer to Amend. Compl., Doc. No. 86 at ¶ 7.

## II.      Waiver By Conduct

In addition to rule-based waiver, a court may determine a venue defense to be waived because it was not timely presented. *In re Micron* at 1094. Courts are required to consider non-Rule 12 bases for waiver. *In re Cutsforth, Inc.*, No. 2017-135, 2017 WL 5907556, at *2 (Fed. Cir. Nov. 15, 2017); *see Uniloc USA* at *3 ("A court may also find that a defendant waived its improper venue defense by actively litigating a case without contesting venue."). Non-rule-based waiver is also referred to as waiver by conduct. The Federal Circuit has suggested that waiver by conduct grounds may include other factors in addition to the sheer time from when the defense becomes available to when it is asserted, including closeness of the trial date and judicial efficiency. *In re Micron* at 1102. Furthermore, "[a] court's forfeiture inquiry should begin and focus on a defendant's post-*TC Heartland* conduct." *Realtime Data LLC v. Hewlett Packard Enterprise Co.*, No. 6:18-CV-00384-RWS, 2018 WL 4599582, at *3 (E.D. Tex. Sep. 24, 2018) (quoting *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-cv-00989-JRG, 2017 WL 5630023, at *3 (E.D. Tex. Nov. 22, 2017) ("[T]he forfeiture inquiry should at least start with an examination of the time from when the defense becomes available to when it is asserted.").

TCT asserts that it has not engaged in any substantive litigation that would constitute waiver by conduct upon the Court's lifting of the stay.[16,17] TCT highlights that the case was stayed when *TC Heartland* was issued and TCT immediately filed its Motion to Transfer[18] asserting improper venue under *TC Heartland* upon the lifting of the stay.[19] TCT argues that where a case was stayed before *TC Heartland* issued, as here, "the relevant time period for considering whether

---

[16] The Court granted WPI's Motion to Lift Stay (Doc. No. 165) on September 21, 2022. Order, Doc. No. 167.
[17] Doc. No. 168 at 1.
[18] TCT's Motion to Transfer for Improper Venue, or Alternatively, to Dismiss (Doc. No. 168) was filed on September 22, 2022.
[19] *Id*. at 3.

a defendant's conduct waived its right to assert the venue defense available after *TC Heartland* is from the time after the stay is lifted."[20]

WPI argues that TCT has waived its right to challenge venue through its conduct because its venue objection was untimely.[21] WPI states that there is no reason that TCT could not have brought its venue challenge after *TC Heartland* was decided despite the case being stayed.[22] WPI heavily relies on *Tinnus Enterprises, LLC v. Telebrands Corp. et al.*[23] as support for the proposition that the fact that this action was stayed when *TC Heartland* was announced is "of little significance." Pl.'s Resp., Doc. No. 171 at 5, 9-10; Pl.'s Sur-Reply, Doc. No. 177 at 1; *see Tinnus Enterprises*, 2018 U.S. Dist. LEXIS 172381, at *5-7 (holding that that defendants had waived their right to object to venue when defendants waited nearly eight months until the stay was lifted to re-urge their motion to dismiss following *In re Micron* because defendants had previously urged a motion to dismiss for improper venue after *TC Heartland* during the pendency of a stay); *see Tinnus Enterprises*, 2017 U.S. Dist. LEXIS 116078, at *8 ("and the case has remained stayed to date… While the Court declines to lift the stay, the Court addresses the merits of Defendants' motion herein.").

In *Tinnus Enterprises*, the court determined that defendants had waived their right to challenge venue through their post-*TC Heartland* conduct by waiting seven months after *In re Micron* to raise their objection. *Tinnus Enterprises*, 2018 U.S. Dist. LEXIS 172381, at *4-5. In so determining, the court "noted" that "the fact the case was stayed was of little significance" because

---

[20] Doc. No. 168 at 4 (citing *Siltek Corp. v. Entech Instruments, Inc.*, No. 15-1531, 2018 WL 1818192, at *1, *3-5 (W.D. Pa. Apr. 17, 2018); *Xodus Med. Inc. v. Prime Med. LLC*, No. 13-cv-01372, 2018 WL 4385243, at *4 (W.D. Pa. Sept. 14, 2018)).

[21] Pl.'s Resp., Doc. No. 171 at 1; Pl.'s Sur-Reply, Doc. No. 177 at 1-3.

[22] *Id.* at 4.

[23] No. 6:15-cv-551, 2018 U.S. Dist. LEXIS 172688 (E.D. Tex. July 5, 2018), *R. & R. adopted by Tinnus Enterprises, LLC v. Telebrands Corp. et al.*, No. 6:15-cv-551, 2018 U.S. Dist. LEXIS 172381 (E.D. Tex. Oct. 5, 2018) and *Tinnus Enterprises, LLC et al. v. Telebrands Corp. et al.*, No. 6:15-cv-551, 2017 U.S. Dist. LEXIS 116078 (E.D. Tex. July 5, 2017) (collectively, "*Tinnus Enterprises*").

the defendants had raised the same challenge for improper venue during a stay that the court had ruled upon following *TC Heartland* but prior to *In re Micron*. *Id*. at *5.

Notwithstanding the unique circumstances of *Tinnus Enterprises*, a party's filing of substantive motions during an action's stay of all proceedings[24] is generally inappropriate without requesting administrative leave to file a motion or requesting a partial lift of the stay. *See Dolby Laboratories, Inc. v. Intertrust Techs. Corp.*, No. 19-cv-03371-EMC, 2021 WL 5322695, at *2-5 (N.D. Cal. Nov. 16, 2021) (denying motion to partially lift a stay pending completion of IPR proceedings to permit defendant to file a summary judgment motion as to one patent that was not subject to the IPR proceeding because defendant had not showed any prejudice if the stay was not lifted and the reasons the stay was imposed had not changed significantly); *Fusilamp, LLC v. Littlefuse, Inc.*, No. 10-20528-CIV, 2017 WL 2671997, at *1 (S.D. Fla. June 13, 2017) (stating that the purpose of a stay is to conserve resources); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2020 WL 419448, at *6 n.6 (D. Del. Jan. 27, 2020) ("[I]f the stay were vacated, the parties and the court would be subject to the substantial expense and effort entailed by…dispositive motions, all decisions on these motions[.]"); *see also Personal Audio LLC v. Google, Inc.*, 230 F. Supp. 3d 623, 626 (E.D. Tex. 2017) (providing that when determining whether to either impose a stay or lift an already-imposed stay pending IPR, the court considers the same three factors as the standard for determining whether a court should impose a stay in the first place).

Moreover, although not binding on this Court, other courts have concluded that when a case was stayed at the time *TC Heartland* issued, a party's motion to transfer within a reasonable time after the stay being lifted is timely. *Blackbird Tech., LLC v. TADD, LLC*, No. 16-970-RGA,

---

[24] (including cases stayed pending parallel proceedings by the USPTO)

2019 WL 3340700, at *3 (D. Del. May 10, 2019), *report and recommendation adopted by Blackbird Tech., LLC v. TADD, LLC*, 2019 WL 3337011 (D. Del. May 29, 2019) (finding no venue defense waiver when case was stayed and administratively closed pending resolution of a Federal Circuit appeal and defendant timely moved to transfer venue within one month of the stay being lifted). However, partial stays or deadline-specific stays do not necessarily preclude a defendant from timely raising a post-*TC Heartland* challenge to venue. *Id.*; *see Princeton Digital Image Corp. v. Ubisoft Entertainment SA*, No. 13-335-LPS-CJB, 2018 WL 3105062, at *5-6 (D. Del. June 25, 2018), *report and recommendation adopted by Princeton Digital Image Corp. v. Ubisoft Entertainment SA,* 2018 WL 6790309 (D. Del. Oct. 23, 2018) (defendant waived right to assert post-*TC Heartland* venue defense despite case being stayed when *TC Heartland* issued because the stay was not a blanket stay and only extended the date for the close of fact discovery).

Here, the case in whole was stayed pending IPR.[25] All deadlines were terminated, and the case was subsequently administratively closed in October 2017.[26] The case was not placed back on the Court's active docket until September 21, 2022, and TCT filed its motion to transfer the next day.[27] Accordingly, the Court concludes that TCT's venue challenge was timely raised.

WPI also suggests that TCT should have brought its venue challenge at the time the Supreme Court granted certiorari to *TC Heartland* and prior to the issuance of the decision.[28] WPI identifies no precedent, nor is the Court aware of such, requiring a defendant to move for improper venue by virtue of a Supreme Court decision that has not yet issued but which may be issued in

---

[25] Order, Doc. No. 147.
[26] *See* Order, Doc. No. 148.
[27] Order, Doc. No. 167.
[28] Pl.'s Resp., Doc. No. 171 at 2.

the future.[29] As such, TCT was not required to move for improper venue due to the Supreme Court merely granting certiorari to *TC Heartland*.

WPI further argues that courts regularly deny venue objections in cases where significant litigation has been undertaken such as in this case.[30] As an initial matter, it is arguable whether extensive litigation has taken place in this case given that the Court has issued no claim construction opinion nor dispositive motion rulings. Moreover, courts generally deny venue objections where the objection is raised shortly before trial, not simply after extensive litigation has occurred. *See, e.g., In re Nintendo of Am., Inc.*, No. 2017-127, 2017 U.S. Dist. LEXIS 14835, 2017 WL 4581670, at *2 (Fed. Cir. July 26, 2017) (Federal Circuit denying review of venue objection where motion to dismiss or transfer filed less than three months before trial date); *In re Techtronic Industries North Am., Inc.*, No. 2017-125, 2017 WL 4685333, at *1 (Fed. Cir. July 25, 2017) (Federal Circuit denying review of venue challenge where challenge filed two months before trial date); *In re Hughes Network Systems, LLC*, No. 2017-130, 2017 WL 3167522, at *1 (Fed. Cir. July 24, 2017) (Federal Circuit denying review of venue challenge when motion to transfer filed less than two months before trial date); *In re Sea Boats, Inc.*, No. 2017-124, 695 Fed. Appx. 543, 543-544 (Fed. Cir. 2017) (Federal Circuit denying review of venue challenge where challenge raised two weeks before trial date).

WPI cites several cases in support of the proposition that TCT has waived its venue objection by undertaking significant litigation in this case. Pl.'s Resp., Doc. No. 171 at 6; *see, e.g., Realtime Data LLC v. NetApp, Inc.*, No. 6:16-CV-00961-RWS, 2017 WL 3588047, 2017 U.S. Dist. LEXIS 133446, at *2-3 (E.D. Tex. Aug. 21, 2017) (determining waiver by conduct due to defendant's participation in discovery, claim construction challenges, and filing a § 1404 motion

---

[29] *See* Pl.'s Resp., Doc. No. 171 at 2.
[30] *Id.* at 6-7.

to transfer, all taking place prior to *TC-Heartland*); *Koninklijke Philips N.V. v. ASUSTeK Comput. Inc.*, No. 15-1125-GMS, 2017 U.S. Dist. LEXIS 111889, at *7 (D. Del. July 19, 2017) (determining defendant waived venue challenge by actively litigating the case since December 2015, emphasizing pre-*TC Heartland* conduct); *InfoGation Corp. v. HTC Corp.*, No. 16-cv-01902-H-JLB, 2017 WL 2869717, 2017 U.S. Dist. LEXIS 103645, at *6-7 (S.D. Cal. July 5, 2017) (determining defendant waived venue challenge by participating in litigation for over one year, emphasizing pre-*TC Heartland* conduct).

However, the majority of cases WPI referenced, *supra*, occurred pre-*In re Micron*, wherein the respective courts had determined that *TC Heartland* did not constitute an intervening change in the law.[31,32] Pre-*In re Micron* courts often placed equal emphasis on the pre- and post-*TC Heartland* conduct of the defendant in the determination of whether defendant had forfeited its venue objection. *See Intellectual Venutures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 WL 5630023, 2017 U.S. Dist. LEXIS 193581, at *9 (E.D. Tex. Nov. 22, 2017) (In light of *In re Micron*, "the Court begins by examining Defendants' conduct after *TC Heartland* was decided."). While *In re Micron* did not prohibit a court from considering a defendant's pre-*TC Heartland* conduct, the Federal Circuit suggested that the forfeiture inquiry should at least start with the timeliness determination of when the defense became available and *may* include other factors such as closeness to trial and judicial efficiency. *In re Micron* at 1101-02.

Accordingly, courts begin with a defendant's post-*TC Heartland* conduct in the determination of whether a defendant has waived its right to object to venue through conduct. *Id.* The litigation in this case exclusively occurred prior to the stay which occurred prior to *TC*

---

[31] *See* Pl.'s Resp., Doc. No. 171 at 6-7.
[32] *See Realtime Data LLC*, 2017 WL 3588047 at *2 (collecting cases).

*Heartland*.[33] Immediately upon lift of the stay, TCT raised its improper venue challenge.[34] Therefore, there is no basis for waiver based on TCT's post-*TC Heartland* conduct.

WPI emphasizes that TCT's venue challenge has resulted in severe prejudice to WPI's ability to develop a factual record regarding proper venue.[35] WPI states that TCT could have raised its venue challenge years ago, but instead "waited more than five years to file the present Motion."[36] Although a court might find forfeiture of venue defense where a defendant raises the venue challenge where dismissal or transfer would unduly prejudice a plaintiff, this is not the case here. *See Uniloc USA* at *3 (determining defendant did not raise its improper venue defense as a "tactical wait-and-see approach," nor did defendant raise its venue defense close to trial or months after the defense became available). Given the stay and subsequent administrative closure of the case, it is understandable that TCT waited to move to transfer the case until the Court lifted the stay. *See Fusilamp, LLC v. Littelfuse, Inc.*, No. 10-20528-CIV, 2017 WL 2671997, at *1 (S.D. Fla. June 13, 2017) (denying motion to dismiss for improper venue post-*TC Heartland* because although "*TC Heartland* applie[d] retroactively to all currently pending patent cases," the case had been administratively closed, and was thus, not a currently pending case).

Here, TCT did not engage in any substantive litigation that could form the basis for waiver by conduct as the case was stayed prior to *TC Heartland*. Nor is the Court aware of extraneous factors which would justify forfeiture. *See In re Micron* at 1101-02. Accordingly, TCT did not waive its right to challenge venue through its conduct and may so challenge the propriety of venue in this District.

---

[33] Defs.' Reply, Doc. No. 175 at 3.
[34] *Id*.; *see* Defs.' Mot. to Transfer, Doc. No. 168.
[35] Pl.'s Resp., Doc. No. 171 at 1.
[36] *Id*. at 1, 8.

### III.   Sanction of Forfeiture

WPI asserts that TCT has forfeited its objection to venue.[37] WPI argues that TCT failed to preserve "most of its knowledge and information concerning its presence in the [Eastern District of Texas] in 2015."[38] WPI states that this failure "has prejudiced WPI's ability to discover and identify facts that support its venue allegations" and that the sanction of forfeiture of TCT's venue objection is the proper penalty for TCT's failure to preserve.[39] WPI notes that TCT changed its HR system in 2018 and failed to suspend routine document retention policies, resulting in a loss of prior employee information and resulting in prejudice to WPI.[40]

TCT counters that it had no duty to preserve any venue-related information and that there was no culpable breach of any duty to preserve.[41] TCT argues that the duty to preserve only extends to documents relevant to a party's claims or defenses.[42] According to TCT, under existing law when the case was filed in 2015, TCT had no duty to preserve venue-related evidence.[43]

For courts to impose spoliation sanctions, "the party seeking the sanction must show the following: (1) the existence of a duty to preserve the evidence; (2) a culpable breach of that duty; and (3) the resulting prejudice to the innocent party." *Accresa Health LLC v. Hint Health, Inc.*, No. 4:18-cv-00536, 2020 U.S. Dist. LEXIS 203428, at *19 (E.D. Tex. Feb. 28, 2020). The duty to preserve evidence arises "when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015).

---

[37] Pl.'s Suppl. Br., Doc. No. 189 at 1.
[38] *Id.*; *see id.* at 5-7.
[39] *Id.* at 1; *see id.* at 7-9.
[40] *Id.* at 8.
[41] Defs.' Suppl. Br., Doc. No. 191 at 9.
[42] *Id.* at 9-10.
[43] *Id.* at 10.

Here, WPI has not shown that TCT had a duty to preserve venue-related evidence after proper venue was established in 2015 under, then current, pre-*TC Heartland* venue law. Neither party had notice that venue-related evidence may be relevant to the litigation after 2015, nor should either party have known the same. *See Guzman*, 804 F.3d at 713. As such, there was no duty after 2015 until 2017 when *TC Heartland* issued for TCT to preserve venue-related evidence. At best, TCT had knowledge of its venue defense when the law changed in 2017, prior to TCT changing HR programs in 2018. However, even if TCT had a duty to preserve after *TC Heartland* issued, spoliation sanctions require a finding of bad faith. *See Guzman*, 804 F.3d at 713 (stating that the Fifth Circuit "permit[s] … sanctions against the spoliator only upon a showing of 'bad faith' or 'bad conduct.'"). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Id.* (citation omitted). Mere negligence is not enough to warrant spoliation sanctions. *Rimkus Consulting Grp. V. Cammarata*, 688 F. Supp. 2d 598, 614 (S.D. Tex. 2010).

There is simply no evidence of bad faith here. TCT notes that it produced over 20,000 pages of documents in response to WPI's venue discovery requests, including information pertaining to multiple employees in Texas at the time of filing.[44] Although a duty may have arisen for TCT to preserve venue-related evidence after the issuance of *TC Heartland*, WPI is merely speculating that there may have been more information regarding venue had TCT not changed HR systems in 2018. Moreover, as discussed in the next section, there is no evidence that the HR information on particular employees WPI sets forth did more than work from home—which does not establish venue. *See Galderma Laboratories, L.P. v. Teva Pharmaceuticals USA, Inc.*, 290 F. Supp. 3d 599, 610 (N.D. Tex. 2017) (stating that the requirement "that the 'regular and established

---

[44] Defs.' Suppl. Br., Doc. No. 191 at 11.

place of business' must be 'the place of the defendant'—means that it cannot be solely a place of the defendant's employee, such as an employee's home, if that employee works from home"). WPI's speculation that it "*believes* other TCT employees worked from places of business in this District … but that TCT has lost information and knowledge concerning their presence and activities"[45] cannot demonstrate prejudice sufficient to warrant a spoliation finding. *See Accresa Health LLC v. Hint Health Inc.*, No. 4:18-cv-00536, 2020 WL 6325733, at *10 (E.D. Tex. Feb. 28, 2020).

Because WPI has not shown a culpable breach of a duty to preserve evidence nor resulting prejudice to WPI, the imposition of spoliation sanctions is inappropriate. For the reasons stated, *supra*, TCT has neither waived nor forfeited its venue objection.

## IV.    Whether Venue is Proper under 28 U.S.C. § 1400(b)

In patent cases, venue is governed by 28 U.S.C. § 1400(b), which provides that venue is proper where the defendant either resides or where the defendant has committed acts of infringement and has a regular and established place of business (quotations omitted). Post-*TC Heartland*, under § 1400(b), domestic corporations "reside" only in their state of incorporation. *TC Heartland* at 1521. There are three general requirements courts use to determine if a defendant has a "regular and established place of business" in a particular district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray* at 1360.

Because the venue analysis is particularly fact-specific, courts may allow a plaintiff to conduct limited venue-related discovery. *See Galderma Laboratories, L.P. v. Teva Pharmaceuticals USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017). District courts have broad

---

[45] (Pl.'s Suppl. Br., Doc. No. 189 at 15) (emphasis added)

discretion in determining whether to grant limited discovery for the purpose of exploring jurisdictional facts, including facts related to venue. *Johnson v. Emerson Elec. Co.*, No. 4:13-CV-1240-JAR, 2013 WL 5442752, at *4 (E.D. Mo. Sep. 30, 2013) (citations omitted). After determining that TCT did not waive its venue objection, the Court, in its discretion, allowed WPI to conduct limited venue-related discovery.[46]

After conducting venue-related discovery, WPI maintains that venue is proper in the Eastern District of Texas,[47] and TCT argues that WPI has failed to meet its burden of establishing proper venue in the district.[48,49]

## A. First *Cray* Factor

Under the first *Cray* factor, "there must be a physical place in the district." *In re Cray*, 871 F.3d at 1360. The place need only be a "physical, geographical location in the district from which the business of the defendant is carried out." *Id.*

According to WPI, TCT had physical places of business in the District at the time of filing.[50] WPI asserts that 5201 Alliance Gateway ("5201 Alliance Gateway" or "the ATC facility") constitutes a physical place in the District.[51] The facility at 5201 Alliance Gateway is operated by ATC, a third-party distributor of TCT products.[52] TCT admits that 5201 Alliance Gateway

---

[46] *See* Pl.'s Resp., Doc. No. 171 at 10-15; *see also* Pl.'s Suppl. Br., Doc. No. 189 and Defs.' Suppl. Br., Doc. No. 191, *generally*.

[47] (Pl.'s Suppl. Br., Doc. No. 189 at 9)

[48] Defs.' Suppl. Br., Doc. No. 191 at 1.

[49] To the extent that WPI argues that its assertions "are sufficient to support an allegation that venue is proper at the pleading stage" (*See* Pl.'s Suppl. Br., Doc. No. 189 at 15), the Court disagrees. TCT challenged venue, venue discovery was undertaken at WPI's request to resolve factual disputes, and WPI now "bears the burden of establishing proper venue" under § 1400(b). *See Parallel Licensing*, 2022 U.S. Dist. LEXIS 90442, at *5 (stating that to conclude a defendant has a regular and established place of business in a particular district, a plaintiff must *prove* all three requirements to establish proper venue); *see also In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

[50] Pl.'s Suppl. Br., Doc. No. 189 at 9.

[51] *Id.* at 9.

[52] Master Services Agreement, Doc. No. 189-2 at 2; Pl.'s Suppl. Br., Doc. No. 189 at 2-3; Defs.' Suppl. Br., Doc. No. 191 at 2.

"straddles county lines of Denton and Collin counties," and thus, is partially within both the Northern and Eastern Districts.[53] However, TCT states that even if 5201 Alliance Gateway is a physical place of business in the District, WPI has not satisfied the second and third *Cray* factors.[54] As such, the Court presumes without deciding that WPI has shown that 5201 Alliance Gateway is a physical place in the District for the purpose of this analysis.

### B.  Second and Third *Cray* Factors

The second and third *Cray* factors require: (1) a "regular and established place of business[;]" and (2) that the place of business be the place "of" the Defendants. *In re Cray*, 871 F.3d at 1362-63. Here, because many of the facts and the parties' arguments go to both factors, the Court analyzes the second and third *Cray* factors together.

Under the second *Cray* factor, a "regular and established place of business" requires "the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). A business may be "regular" if it operates in a "steady[,] uniform[,] orderly[, and] methodical manner." *In re Cray*, 871 F.3d at 1362. An "established" place of business is settled or fixed permanently, and not transient. *Id*. at 1363.

An agency relationship is a fiduciary relationship that arises when a principal manifests assent to an agent that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act. Restatement (Third) of Agency § 1.01 (2006) (quotations omitted). The essential elements of an agency relationship are: "(1) the principal's right to direct or control the agent's actions, (2) the manifestation of consent by the principal to the agent that the agent shall act on his behalf, and (3) the consent by the agent to act."

---

[53] Defs.' Suppl. Br., Doc. No. 191 at 1-2; *see* Pl.'s Suppl. Br., Doc. No. 189 at 2-3.
[54] *Id*.

*In re Volkswagen Grp. Of Am.*, 28 F.4th 1203, 1209 (Fed. Cir. 2022) (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003)). The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services by persons who are not agents. *In re Google LLC*, 949 F.3d at 1345-46 (quotations omitted); *In re Volkswagen Grp. Of Am.*, 28 F.4th at 1209. Simply, "setting standards in an agreement for acceptable service quality does not of itself create a right of control." *In re Volkswagen Grp. Of Am.*, 28 F.4th at 1209-10; Restatement (Third) of Agency § 1.01(f)(1).

Under the third *Cray* factor, the "'regular and established place of business' must be 'the place of the defendant.'" *In re Cray*, 871 F.3d at 1363. To be the place "of" the defendant, "the defendant must establish or ratify the place of business." *Id*. A court may consider "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place[;]" any marketing or advertisements by the defendant, "but only to the extent they indicate that the defendant itself holds out a place for its business[;]" "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place[;]" and "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." *Id*. at *1363-64. Importantly, "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient." *Id*. at *1364.

According to WPI, the second and third *Cray* factors are met because TCT conducted "regular and established business" at the ATC facility through TCT employees and other agents working from ATC offices and other locations in the district.[55] Similarly, WPI asserts that the ATC

---

[55] Pl.'s Suppl. Br., Doc. No. 189 at 10-15.

facility constitutes the place "of" TCT because (1) TCT employees used the facility as their office, and (2) because TCT "established interim control over ATC and its employees who acted on TCT's behalf."[56] WPI states that TCT employees responsible for supply chain issues worked from offices at the ATC facility under supervisor Keiki Rodriguez.[57] WPI's evidence that TCT employees regularly worked at the ATC facility in 2015 seems to derive from a handful of statements made by former TCT employee Joseph Venable.[58] When asked whether he recalls TCT "ever doing business with" ATC, Venable stated that there were "supply chain people" who "worked out of an office in [the ATC facility], I believe" who reported to Keiki Rodriguez.[59] Venable goes on to state that he had meetings in the conference room at the ATC facility with Keiki Rodriguez.[60] Venable specifically noted that "[i]t was an annual review or quarterly business review" and that TCT employees were in the room with a handful of ATC employees.[61]

WPI also states that it "believes" TCT employees worked from other places of business in the district that could be considered "of" TCT.[62] Here, WPI reiterates that TCT has "lost information concerning their presence and activities in this District[,]" presumably prohibiting WPI from obtaining more evidence of proper venue.[63]

In response, TCT states that it is likely any such employees were temporarily working from ATC offices "given that Keiki Rodrigez, the head of [TCT's] supply team, was based in Irvine, California."[64] TCT argues that any statement that it rented a facility in the district is "incomplete and misleading." In particular, TCT points to Venable's testimony that a "temporary office space"

---

[56] Id. at 10-11, 15.
[57] Id. at 10.
[58] See id. (citing Venable Dep., Doc. No. 189-5 at 27:19-28:19).
[59] Venable Dep., Doc. No. 189-5 at 27:19-28:1.
[60] Id. at 28:1-4.
[61] Id. at 28:4-10.
[62] Pl.'s Suppl. Br., Doc. No. 189 at 15.
[63] See id.
[64] Defs.' Suppl. Br., Doc. No. 191 at 6-7; Sutton Dep., Ex. 1, Doc. No. 191-2 at 35:11-16.

was rented in the district so he could provide training to another employee for 2-3 weeks.[65] According to Venable, the temporary office space was a weekly rental and was chosen as a location at least in part because the third week was free.[66] After Venable finished training the employee at the temporary office space, that employee returned to Irvine, California—where the employee resided—to work out of the Irvine office.[67]

The venue facts of this case are similar to those of *Fractus v. Zte Corp.*[68] In *Fractus*, the defendant established a call center "with" a third-party, wherein at least two full-time employees of the defendant worked.[69] The parties did not dispute that the call center was a regular and established place of business; however, the issue for the court was whether the call center was the place "of" the defendant.[70] The plaintiff argued that the defendant exercised significant control over the call center's customer service representatives by requiring a specified drug test and background check, "a formal skills assessment," and "the authority to audit training sessions to measure the effectiveness of the training program."[71] The defendant countered that it had no authority to correct or remove call-center customer service representatives, that the call center may service a competitor of defendant with defendant's approval and upon the installation of physical barriers to protect confidential information, and that defendant did not control, review, or provide feedback on the performance of individual customer service representatives.[72] The Court determined that the presence of two employees of the defendant who worked at the call center on a part-time basis and in visitor office space was insufficient, without more, to make the third-party

---

[65] *Id.* at 8. (citing Venable Dep., Ex. 2, Doc. No. 191-3 at 18:21-25, 21:12-20, 32:1-17).
[66] Venable Dep., Ex. 2, Doc. No. 191-3 at 32:5-13.
[67] *Id.* at 32:14-17.
[68] No. 2:17-CV-00561-JRG, 2018 U.S. Dist. LEXIS 244831 (E.D. Tex. Sept. 28, 2018).
[69] *Id.* at *2.
[70] *Id.* at *3.
[71] *Id.* at *11.
[72] *Id.* at *11-12.

call center a place "of" the defendant.[73] In addition, in finding that the defendant and third-party did not act as a single entity, the Court distinguished parties acting as a single entity from parties acting under an agreement for the provision of services.[74] The Court further concluded that "quality control stipulations are not sufficient to alone transform [a third-party] into the same entity as [the defendant]",[75] and that there was insufficient evidence to support a finding that the call center was a place "of" the defendant.[76]

Here, there is even less evidence than in *Fractus* that the ATC facility is the place "of" the Defendant. The ATC facility was not rented, leased or owned by TCT, nor did TCT ever market or hold ATC out to the public as TCT. *See In re Cray* at 1363. There is no suggestion that TCT marketed or advertised itself as ATC. *See id*. There is no evidence that TCT's continued business with ATC was conditioned upon ATC retaining the 5201 Alliance Gateway location. *See id*. The presence of TCT employees at the ATC facility to oversee "inbound and outbound shipments," or the temporary use of "an ATC office" by a handful of TCT employees,[77] do not, without more, establish the ATC facility as the place "of" TCT. *See Fractus generally*. Similarly, a TCT annual or quarterly review held in an ATC conference room attended by TCT employees—at least some of whom were stationed in other states—is insufficient to establish the ATC facility as the place "of" TCT. *See Fractus generally; see also* Venable Dep., Doc. No. 189-5 at 28:4-10.

Likewise, WPI's argument that a temporary rental of office space to train employees constitutes the place "of" TCT where TCT was conducting "regular and established business" is unpersuasive.[78] The single rental of 2-3 weeks to train an out-of-state employee, without more,

---

[73] *Id*. at *7.
[74] *Id*. at *10-14.
[75] (*id*. at *12)
[76] *Id*. at *13-14.
[77] (*See* Pl.'s Suppl. Br., Doc. No. 189 at 4)
[78] *See* Pl.'s Suppl. Br., Doc. No. 189 at 15; *see also* Venable Dep., Ex. 2, Doc. No. 191-3 at 18:21-25, 21:12-20, 32:1-17.

cannot satisfy the second *Cray* factor of being a "regular and established" place of business. *See In re Cray*, 871 F.3d at 1362 (stating that "sporadic activity cannot create venue") (citing *Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941) (stating that "[a] 'regular place of business' is, obviously, a place where such business is carried on 'regularly' and not merely temporarily, or for some special work or particular transaction.")).

WPI next argues that the ATC facility was the place "of" the Defendants where Defendants conducted "regular and established business" because an agency relationship existed between TCT and ATC or ATC's employees.[79] In support, WPI notes that TCT: shipped millions of products per year to ATC; provided detailed instructions to ATC employees tasked with inspecting the products and making them commercial ready; supervised and reviewed issues with the supply chain; and worked with ATC to improve processes.[80] WPI further states that TCT was able to "access [ATC's] facilities to review ATC's processes and work."[81]

TCT argues that there was no agency relationship between TCT and ATC.[82] Though TCT had the right to inspect its product held by a third-party, it argues this is standard and "merely reflective of the ordinary desire of manufacturers to set sufficient minimum performance and quality standards."[83] TCT emphasizes that this practice is "reasonable and customary" in the industry and is insufficient to show day-to-day control of the ATC's operation.[84] TCT argues that the conduct WPI focuses on (e.g. providing "kitting" instructions and visiting ATC to review

---

[79] Pl.'s Suppl. Br., Doc. No. 189 at 11-15.
[80] *Id*. at 11-14.
[81] *Id*. at 13.
[82] Defs.' Suppl. Br., Doc. No. 191 at 3-6.
[83] Defs.' Suppl. Br., Doc. No. 191 at 6 (citing *Westport Fuel Systems Canada Inc. v. Ford Motor Co.*, No. 2:21-CV-00453-RWS, 2022 WL 4280490, at *2 (E.D. Tex. Sep. 15, 2022)); *See* Venable Dep., Ex. 2, Doc. No. 191-3 at 16:12-22.
[84] *Id*.; *See* Venable Dep., Ex. 2, Doc. No. 191-3 at 16:12-25.

procedural issues) is simply "TCT and ATC's cooperation in delivering quality products, required under the Master Services Agreement."[85]

As an initial matter, the fact that TCT shipped products into ATC in Texas and had no locations of their own[86] cannot establish venue for TCT in this district under § 1400(b). Case precedent is consistent in holding that the place of business of a distributor, without more, cannot establish venue for its supplier under § 1400(b). *See*, *e.g.*, *Emed Techs. Corp. v. Repro-Med Sys.*, No. 2:17-CV-728-WCB-RSP, 2018 U.S. Dist. LEXIS 93658, at *10 (E.D. Tex. June 4, 2018) (collecting cases); *Wet Sounds, Inc. v. PowerBass USA, Inc.*, No. CV H-17-3258, 2018 U.S. Dist. LEXIS 64600, 2018 WL 1811354, at *2 (S.D. Tex. Apr. 17, 2018).

Next, ATC's adherence to quality control standards set out by TCT is insufficient to establish that TCT had the requisite interim control over ATC or ATC employees necessary to create an agency relationship. *See In re Google LLC*, 949 F.3d at 1345 (stating that "[t]he power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services by persons who are not agents."); Restatement (Third) of Agency § 1.01(f)(1); *see In re Volkswagen Grp. of Am.*, 28 F.4th at 1209. There is no evidence that TCT could direct the ATC employees to perform their work in another part of the building nor was ATC required to inform TCT of where in the building the "kitting" was being performed. *See Fractus*, 2018 U.S. Dist. LEXIS 244831, at *13. TCT also had no control over ATC's employees outside of providing "kitting" and inspection requirements. *See Coffey v. Fort Wayne Pools*, 24 F. Supp. 2d 671, 677 (N.D. Tex. 1998) (stating that to prove an agency relationship exists, there must be evidence from which the court could conclude that "the alleged principal had the right to control *both the means and the details of the process* by which the alleged agent was to accomplish the

---

[85] *Id*. at 4.
[86] (Pl.'s Suppl. Br., Doc. No. 189 at 11-12, 14)

task.") (emphasis added) (quoting *In re Carolin Paxson Advertising, Inc.*, 938 F.2d 595, 598 (5th Cir. 1991)). TCT had no hiring or firing authority over ATC or its employees. *See Fractus*, 2018 U.S. Dist. LEXIS 244831, at *12-13. There is no evidence that TCT had control over breaks or any other task to be completed by ATC employees, including whether and how to inspect devices for other clients of ATC. *See In re Volkswagen Grp. of Am.*, 28 F.4th at 1209. Although ATC employees performed "kitting" and device inspections according to requirements provided by TCT,[87] such activities are in accordance with the Master Services Agreement "to ensure inventory, quality, process and business controls are maintained" in the services performed by ATC.[88] TCT's inspection requirements (e.g. viewing distance, position, and time) and requests for updates as to "how many were inspected and what the findings were" does not constitute the kind of interim control over ATC's employees necessary to establish the existence of an agency relationship.[89]

Moreover, although a contractual statement as to the existence of an agency relationship is not definitive, it is some evidence a court may consider in determining the nature of the relationship. W. Michael Garner, 2 Franch. & Distr. Law & Prac. § 9:42 (2021) (stating "[w]here a contract establishes an independent contractor relationship rather than an agency relationship and does not grant the principal control over the details of the contractor's work, then evidence must be produced to show that despite the contract terms, a true relationship between the parties gave the principal a right of control."). Here, the Master Services Agreement between TCT and ATC labels the relationship as one of independent contractor and not one of agency.[90] WPI has not shown that despite the contract terms, an agency relationship existed giving TCT the right of control. *See* Garner, 2 Franch. & Distr. Law & Prac. § 9:42.

---

[87] (*See* Pl.'s Suppl. Br., Doc. No. 189 at 3-4)
[88] *See* Master Services Agreement, Doc. No. 189-2 at 9.
[89] *See* Pl.'s Suppl. Br., Doc. No. 189 at 3.
[90] Master Services Agreement, Doc. No. 189-2 at 5.

In sum, WPI failed to show that TCT had the requisite "interim control" over ATC that an agency relationship requires. *See In re Volkswagen Grp. Of Am.*, 28 F.4th at 1209. Accordingly, WPI failed to show that the ATC facility was the place "of" the Defendants or that TCT conducted "regular and established business" at the facility through ATC or its employees as agents acting for a principal. *See In re Cray*, 871 F.3d at 1362-63.

## V.    Transfer or Dismissal

Because venue is not proper in the Eastern District of Texas, the Court must either dismiss the case or transfer it to any district or division in which it could have been brought. 28 U.S.C. § 1406(a). "The decision whether a transfer or dismissal is in the interest of justice rests within the sound discretion of the district court." *Personal Audio LLC v. Google, Inc.*, 280 F. Supp. 3d at 936 (internal quotations omitted). However, transfer is usually preferred over dismissal as transfer is considered more in the interest of justice. *Id.*; *see Parallel Network Licensing LLC v. Arrow Electronics, Inc.*, No. 4:21-CV-00714, 2022 WL 1597364, at *6 (E.D. Tex. May 19, 2022); *see also Realtime Data LLC*, 2018 WL 4599582, at *4 (transferring case in the interest of justice rather than dismissing it because plaintiff would have been penalized by losing years of damages if forced to refile).

Here, it is in the interest of justice to transfer the case under § 1406(a). As the case was initiated in 2015, much time has elapsed, and dismissal risks barring parties from refiling valid claims. *See Evs Codec Techs., LLC v. Zte Corp. et al.*, No. 2:18-CV-00344-JRG, Doc. No. 38 (E.D. Tex. Jan. 10, 2019) (finding transfer over dismissal was in the interest of justice because "[p]laintiff could not have had knowledge that its venue facts would not support proper venue at the time it filed the complaint"). TCT defendants are Delaware corporations with regular and

established places of business in Irvine, California.[91] Thus, venue is proper in the Central District of California.

**Conclusion**

Based on the foregoing, the Court **GRANTS-IN-PART** Defendant TCT's Motion to Transfer for Improper Venue, or Alternatively, to Dismiss (Doc. No. 168). It is **ORDERED** that the above-styled case be **TRANSFERRED** to the Central District of California.

So ORDERED and SIGNED this 19th day of July, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[91] Defs.' Mot. to Transfer, Doc. No. 168 at 1, 9; Defs.' Reply, Doc. No. 175 at 5.